We'll now move to the next case on the calendar, which is United States v. Collymore. Let me see if counsel is available. So we have Ms. Barth. Are you on the line? I am, Your Honor. Thank you. Okay. And Mr. Leno? Good morning, Your Honor. I'm here. All right. So, Ms. Barth, you reserved two minutes for a rebuttal. So that gives you eight minutes now with a one-minute warning when the yellow light goes on. Okay? Thank you, Your Honor. Thank you. May it please the Court, Michelle Barth on behalf of the appellant, Mr. Dwayne Collymore. The first issue I'd like to discuss with the Court is how Mr. Collymore's guilty plea did not comply with Rule 11, requiring daycare. In response, the government argues that there were no Rule 11 violations for two main reasons. First, the government argues that the change in the penalties pursuant to the First Step Act after the guilty plea did not create error because error is judged at the time of the plea rather than at the time of the appeal. And then the second argument that the government makes is even if there was error, such error did not violate Mr. Collymore's substantial rights. Now, neither of these arguments are persuasive. First, Rule 11 error is judged by the substantive laws governing at the time of the appeal. And I think this principle is clearly established in this Court and the Supreme Court case law. For example, in U.S. v. Henderson, the Supreme Court reiterated its holding that error is plain even if the trial judge's decision was plainly correct at the time when it was made, but subsequently becomes incorrect based on a change in the law. This Court more recently has held in U.S. v. Baldy that a guilty plea error is judged by the substantive law at the time of the appeal. The government's cases that it relies on, Mercado and Alvarado, are inapposite because they deal with the procedural requirements of Rule 11 at the time of the defendant's plea, as opposed to the substantive law governing the crimes to which the defendant pled guilty. Now, with respect to the government's second argument that the errors did not violate Mr. Collymore's substantial rights, we think that the record here amply demonstrates that there was prejudice. There was a substantial degree of uncertainty as to Mr. Collymore's state of mind. Mr. Collymore expressed such uncertainty, for example, at the time of his guilty plea, that the magistrate judge took a recess so that Mr. Collymore could consult with outside counsel regarding his plea. Mr. Collymore's first Mr. Collymore expressed such confusion and dissatisfaction with his counsel. I think it's important to note that the entire record demonstrates from beginning to end that Mr. Collymore received inconsistent information regarding his sentencing exposure, all of which we think... Well, what does that, this is Judge Park, what does that have to do with the First Act? How would a minimum of 15 years have changed his calculation? So, one of the requirements of Rule 11 is that the defendant understand what any mandatory minimum of penalties apply, the nature of each charge. And in this case, he was informed of a higher penalty at the time, he decided to give up his valuable trial rights and instead plead guilty. And this Court, on a couple of occasions, has found that a reversible Rule 11 error for the same reasons we offer in this brief, in our brief. In USC Harrington, this Court found reversible Rule 11 error for largely the same reasons found by this Court in Gonzales, where a defendant was informed of a higher penalty than actually applied in... Right, right. But the difference here, this is Judge Sullivan, the difference here is that by the time of sentencing, Mr. Collymore clearly understood that the First Step Act had been enacted and that it changed his penalties, right? Well, I don't know that the record reflects that he clearly understood that. The Court never asked Mr. Collymore if he understood what the penalties were, why they changed, or whether he would like to withdraw his guilty plea based on the previous misinformation. Wait one second. I mean, the PSR set forth what the new penalties were in light of the First Step Act, right? That's correct. And Mr. Collymore indicated, that was his lawyer, indicated that he had reviewed it with Mr. Collymore, right? His lawyer indicated that, Your Honor, but Mr. Collymore did not. The Court never asked Mr. Collymore if he had read and discussed the corrected PSR with his counsel, or if he understood the penalties or why they changed. So you're saying that the rule then ought to be that for any situation involving a plea that but a sentencing that postdates it is that the judge has to ask the defendant if he wishes to withdraw his guilty plea? Well, I don't know that it would apply in every single case, but I think the record supports such a conclusion here because it was never established that Mr. Collymore understood what those penalties were, and whether had he understood what those penalties were, whether he really wanted to give up his valuable trial rights and plead guilty instead. And when we look at the record, we also have to consider that Mr. Collymore had a ninth grade education. During his guilty plea, he mentioned to the Court that he had trouble focusing, that he suffers anxiety, and more than once, he needed more time with his counsel. And even his attorney said at 891 to 892 that it was sometimes hard for his attorney to understand what Mr. Collymore knew or didn't know or understood. So I think that this record represents the sort of troubling mix of information that this Court has previously found such error and required vacater. This is Judge Nardini. Can I direct your attention to one point in the plea hearing, and it's at page 37 of the appendix, which I think may be the most difficult fact for your client to overcome. And this is where he states, in response to a question from the Court about whether he's satisfied with the representation and advice provided by his attorney, he said, well, I thought I could get something better than that, but I was told there's no way, so I guess my back's against the wall. And as I read that, he's saying, I'm going to plead guilty today. I would have rather plead guilty with a lower sentencing exposure, but since I can't, I'm going to go forward today. That's very different from cases like Harrington or Harrison, where there were indications that the defendant wanted to withdraw his guilty plea, you know, wouldn't have pled guilty. Here we have a defendant who's basically said, no, no, no, this is my purpose. My purpose is to plead guilty with a lower sentencing exposure. And as the first effect happened along, he got his wish. So doesn't that make this a very different case based on your own client's representation of what he was inclined to do at the time of the plea? No, I don't think it makes it that different of a case, because what we have to consider is what information did Mr. Collingmore have at the time he made this decision? And the information he had would tip the scales in favor of him pleading guilty, because he was informed that such a huge minimum mandatory sentence applied to him. Had he known it had been, it was much lower, he may have been in a much better negotiating position with the his sentencing exposure reduced as a result of the First Step Act, I don't believe has any impact on this review of the record as to whether or not there is any probability that a different result would have happened. When Mr. Collingmore says, I guess I can't do any better. The truth is, he might have done a lot better. Had he known that a 15-year minimum mandatory applied instead of a 30-year one. And as the court recognized in Harrington, that sort of information, a mandatory minimum sentence, presents a really strong inducement plea. And that information was found in Harrington to be presumptively significant in the defendant's decision-making. And I think that has equal application here. And now there is another issue that I realized I only have a minute left, and I'd like to touch on it. And that is attempted haz-back robbery is not a crime of violence. I think it is important to note as set forth in the government's latest 28J letter that the crime of violence issue regarding attempted haz-back robbery remains pending in an appeal with priorities before the court in United States Supreme Court. And I believe that Judge Sullivan is on that panel. Nonetheless, I'd like to take a moment to discuss the government's argument and some of the recent 28J letters. One critical fact is that the government's argument bypasses the categorical analysis in advocating for a per se rule regarding attempt crimes. The government's approach, its argument does not square with the categorical approach. There are several district court judges that agree with Mr. Collier-Morse's position. Some of those cases are cited in the reply brief, but there are some additional cases that have come out since the reply brief, namely locked in the United States. And the PICA case decided by Judge Amon in the Eastern District of New York, and U.S. Chief Judge Garoff in the Eastern District of New York as well. And all of these judges, plus three judges of the 11th Circuit in St. Hubert, and at least one judge in the Ninth Circuit, universally agree that an individual's conduct may satisfy all of the elements of an attempt without anything more than the intent to use force in some act and further into the intended offense, but does not involve the use, attempted use, or threatened use of force. So it is incorrect to say that a person necessarily attempts to use physical force within the meaning of 924C's element clause, just because he attempts a crime that, if completed, would be violent. So conviction for an attempt crime also requires an overt act, but that element does not require physical force. So with that, I'd still like to have a minute or two for rebuttal, please. Actually, Ms. Barth, can I ask you one question? I found it in the appendix, but Mr. Collymore, through counsel, indicated after the First Step Act, at a conference at which the sentencing was adjourned, that he didn't want his plea back, right? That's what counsel said. He's not saying that he wants his plea back. He's not saying that. But in essence, he wanted an his plea back and didn't ask for it? I don't know that that is as clear as the court is suggesting. His attorney made that assertion, but at that time, at that adjournment, Mr. Collymore did not have a correct PSR in front of him. He had also, at that time, right when that happened, the district court had just muddied the waters for Mr. Collymore by indicating yet another incorrect fact regarding Mr. Collymore's penalties. At that adjournment, the court explained to Mr. Collymore regarding Count 4, there is, at this point, for the defendant, no mandatory minimum and the statutory maximum of life, I believe. That's at 891, right? Right. But doesn't that cut the other way then? I mean, so in other words, he pled guilty before the First Step Act because he thought that the consequences would be so dire that this is the best he could do. After the First Step Act, he gets now the break that he thought or hoped he could negotiate. And the judge misinforms him by telling him there's no mandatory minimum. And it turns out that there is a relatively slight mandatory minimum. It just seems to me that, is there any reason, I think, that your client's lawyers didn't go over with him the pre-sentence report when they said they did? Well, I don't know that there's a reason in the record that would suggest that his lawyers didn't go over the pre-sentence report with him. But the court is required to address the defendant personally under Federal Rule of Procedure. He went over the report with his lawyers and they can review and discuss the corrected pre-sentence report with his lawyer. So the important question is not whether or not he went over the pre-sentence report with his lawyer, it's whether if he had that information at the time of this guilty plea, he would have still entered into that guilty plea. And I think these circumstances at least reveal on this record that there was a serious mix of information that was confusing. And Mr. Colleymore expressed not only at the time of this guilty plea, but at his first sentencing hearing and at his second sentencing hearing, that he was confused and dissatisfied with his counsel. And I don't think that's unsurprising given that he was not correctly informed of the penalties until, if ever, well after his guilty plea. And the court took no remedial action in asking whether or not that impacted his decision to go forward with this guilty plea. All right. Thank you. You reserved a minute for rebuttal. We'll now hear from Mr. Leno. Good afternoon and may it please the court. My name is Jared Leno. I'm an assistant U.S. attorney in the Southern District of New York. I represent the United States in this appeal as I The defendant's arguments are without merit. First, the defendant cannot establish plain error as to his guilty plea proceeding. That's for several reasons. First, there was no error, let alone a clear or obvious one, because the defendant was actually advised of the statutory penalties at the time of his plea. And further, any purported error did not affect the defendant's substantial rights for the reasons the panel has just articulated in its question. Second, attempted Hobbs Act robbery is a crime of violence under the Force Clause of Section 924C, in light of the fact that the offense requires proof of both a specific intent to complete the crime of violence and a substantial step towards completion of that crime as a whole. As a result, the judgment of conviction should be affirmed here. All right. Any questions for Mr. Leno? No, thank you. Okay. All right. Thank you, Mr. Leno. You can be seated. We'll now hear a minute of rebuttal from Ms. Barnes. I just invite any other questions about the briefs or the argument. If there are no other questions, I will submit. Okay. Well, hearing none, we will reserve decision. Thanks very much to both of you.